******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# FACTOR KING, LLC *v.* HOUSING AUTHORITY FOR THE CITY OF MERIDEN ET AL.
## (AC 42270)

Lavine, Keller and Bishop, Js.

*Syllabus*

The plaintiff appealed from the judgment of the trial court granting summary judgment in favor of the defendant. The plaintiff and A Co., a nonparty entity, entered into a factoring and security agreement under which the plaintiff received the option to purchase any of A Co.'s accounts receivable that it deemed to be eligible accounts, and, additionally, received a security interest in all of A Co.'s accounts receivable. Thereafter, the plaintiff sent a notice to the defendant asserting that A Co. had assigned to it an invoice due to A Co. from the defendant. The defendant remitted payment directly to A Co. The plaintiff commenced this action, claiming that payment should have been made to it pursuant to statute (§ 42a-9-406), and not to A Co. The trial court granted the defendant's motion for summary judgment and denied the plaintiff's motion for summary judgment, from which the plaintiff appealed to this court. *Held*:

1. The trial court properly granted the defendant's motion for summary judgment, that court having properly held that the plaintiff was not entitled to a direct payment of a receivable due to A Co. from an account not purchased through its agreement with A Co., but in which the plaintiff had a security interest; the factoring agreement did not constitute an outright sale of A Co.'s accounts but, rather, it gave to the plaintiff the sole discretion to purchase certain of A Co.'s accounts, the agreement did not indicate that either party to that agreement intended for the unpurchased accounts to be subject to collection upon the notice and demand of the plaintiff in the absence of a breach by A Co., and the agreement's security interest provision had no direct relationship to its separate provisions authorizing the plaintiff to purchase and collect on certain accounts; moreover, although the plaintiff was assigned a security interest in all of A Co.'s accounts receivable, including that of the defendant, there was no assignment of the amount due or to become due such as to trigger the payment provision of § 42a-9-406, and, thus, because the plaintiff had not been assigned that particular receivable it had no right to the proceeds from that account and the plaintiff incorrectly imported its status as an assignee of a security interest in A Co.'s accounts receivable into the term "assignee," as used in § 42a-9-406.

2. The trial court properly denied the plaintiff's motion for summary judgment; the court determined that there was no genuine issue of material fact that the plaintiff had never been assigned a specific legal right to recover on the specific invoice related to the payment and, this court having determined that an actual assignment of the amount due or to become due is a precondition to collecting on an invoice pursuant to § 42a-9-406, agreed with the trial court that there was no genuine issue of material fact that the requisite assignment of the defendant's invoice never occurred.

Argued January 16—officially released May 26, 2020

*Procedural History*

Action to recover damages for, intera alia, breach of contract, brought to the Superior Court in the judicial district of New Haven, where the court, *McNamara, J.*, denied the plaintiff's motion for summary judgment and granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Bruce Loren*, pro hac vice, with whom was *Kasey*

*Procko Burchman*, for the appellant (plaintiff).

*Kent J. Mancini*, for the appellee (named defendant).

*Opinion*

BISHOP, J. The plaintiff, Factor King, LLC, appeals from the judgment of the trial court granting summary judgment in favor of the defendant Housing Authority for the City of Meriden.[1] The question presented in this appeal is whether, pursuant to a factoring and security agreement between a factor (purchaser) and a seller, the purchaser is entitled to direct payment of a receivable due to the seller from an account not purchased through the agreement, but in which the purchaser has a security interest to secure the seller's obligations as delineated in the agreement. Because we answer that question in the negative, we affirm the judgment of the trial court granting summary judgment in favor of the defendant.

The record in this matter reveals the following undisputed facts and procedural history. The plaintiff is a factoring company.[2] The defendant is a public housing authority located in Meriden. In June, 2016, the defendant and AEG of New England, LLC (AEG), a nonparty entity, entered into a contract pursuant to which AEG would perform certain labor and provide certain materials in connection with construction projects being overseen by the defendant. On August 30, 2016, the plaintiff and AEG entered into a factoring and security agreement (agreement) under which the plaintiff received the option to purchase any of AEG's accounts receivable that it deemed to be eligible accounts,[3] and, additionally, received a security interest in all of AEG's accounts receivable, purchased or unpurchased.

In salient parts, the language of the agreement provides that AEG will provide the plaintiff with a schedule of certain of AEG's accounts available for purchase. Additionally, the agreement provides that the plaintiff may, but will not be required to, purchase any of those accounts that it deems eligible. The financial requirements for such purchases are set forth in detail elsewhere in the agreement.

Importantly, the agreement also contains security provisions. Section 7.1 of the agreement provides: "As collateral securing the [o]bligations, [AEG] grants to [the plaintiff] a continuing first priority security interest in the [c]ollateral." Collateral is defined under the agreement as "all [AEG's] now owned and hereafter acquired [a]ccounts, [c]hattel [p]aper, [i]nventory, [e]quipment, [i]nstruments, [p]roperty, [d]ocuments, [l]etter of [c]redit [r]ights, [c]ommercial [t]ort [c]laims, and [g]eneral [i]ntangibles." The obligations secured by the collateral are defined in the agreement as "all present and future obligations owing by [AEG] to [the plaintiff] whether arising hereunder or otherwise, and whether arising before, during or after the commencement of any bankruptcy case in which [AEG] is a debtor."

With that factual background, we turn next to a

review of relevant occurrences after the date of the agreement. The record reveals that the plaintiff purchased from AEG two accounts receivable pursuant to the option terms of the agreement. The debtor with respect to both of the purchased invoices was an entity known as Bristol Enterprises, LLC, and the invoices were for work performed by AEG in conjunction with two projects located in Bristol: the Bingham School project invoice, in the amount of $228,019.10, and the O'Connell School project invoice, in the amount of $265,980.90. Having exercised its option to purchase these two accounts, and pursuant to Uniform Commercial Code (UCC) § 9-406, codified in similar language as General Statutes § 42a-9-406,[4] notice of the plaintiff's purchase of these accounts was sent to Bristol Enterprises, LLC, and, subsequently, Bristol Enterprises, LLC, paid these two amounts to the plaintiff. In the present appeal, the parties agree that these two accounts receivable were the only ones purchased by the plaintiff pursuant to the terms of the agreement.

Nevertheless, by letter dated September 19, 2016, the plaintiff sent notice to the defendant asserting that AEG had assigned to the plaintiff all of its present and future accounts receivables.[5] The notice purported to be issued pursuant to § 9-406 of the UCC. On November 9, 2016, the defendant remitted payment in the amount of $2,217,750 directly to AEG, and not to the plaintiff, in response to an invoice sent by AEG for work AEG had performed for the defendant. The plaintiff commenced the present action, claiming that, pursuant to its notice, and in accordance with the terms of its agreement with AEG, the plaintiff was the entity to whom the payment of $2,217,750 should have been made.

The parties filed competing motions for summary judgment. In its opposition to the plaintiff's motion for summary judgment, the defendant argued that because the plaintiff had not purchased the invoice between itself and AEG, it was under no obligation to pay the invoice amount to the plaintiff and, instead, it complied with its contractual obligation to AEG. From the judgment of the trial court granting summary judgment in favor of the defendant, and from the court's denial of the plaintiff's own motion for summary judgment, the plaintiff now appeals. Additional facts will be set forth as necessary.

On appeal, the plaintiff argues that the court erred in ruling that (1) § 42a-9-406 applies only to invoices actually purchased by the party assigned an account, and (2) the plaintiff is not considered an "assignee" of the account in question under the agreement such as to trigger the protection of § 42a-9-406. The plaintiff also challenges the court's denial of its motion for summary judgment. In response, the defendant argues that (1) § 42a-9-406 contemplates the purchase of specific invoices in order for those amounts to become collect-

ible by the plaintiff, and (2) the plaintiff is not an "assignee" of the account in question for purposes of triggering § 42a-9-406 because the plaintiff had only been "assigned" a security interest in the account, and had not been assigned the specific amount due on the invoice sent to the defendant. We agree with the defendant and, accordingly, affirm the judgment of the trial court.

We first set forth the appropriate standard of review and governing legal principles. "The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The courts are in entire agreement that the moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . .

"Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Smith* v. *Marshview Fitness, LLC*, 191 Conn. App. 1, 8, 212 A.3d 767 (2019). In analyzing the plaintiff's claim, we must interpret both the contract between the parties and the language of § 42a-9-406.

I

A

We look first to the language of the contract between AEG and the plaintiff in order to determine the nature of the agreement as it pertains to the plaintiff's option to purchase accounts receivable, the security interest held by the plaintiff in all of AEG's accounts, and whether the contract provides the plaintiff with the right to receive payment on those AEG accounts that it has not purchased pursuant to the agreement.

"When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . . [W]here there is definitive contract language,

[however], the determination of what the parties intended by their contractual commitments is a question of law. . . . It is implicit in this rule that the determination as to whether contractual language is plain and unambiguous is itself a question of law subject to plenary review. . . .

"In determining whether a contract is ambiguous, the words of the contract must be given their natural and ordinary meaning. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 101–103, 84 A.3d 828 (2014). We do not find the contract terms to be ambiguous and, accordingly, we undertake a plenary review of the agreement's provisions.

It is important to an understanding of the parties' transactional relationship that the agreement contains both factoring provisions (factoring agreement) and security provisions (security agreement). The factoring agreement provides that "[AEG] shall offer to [the plaintiff] as absolute owner certain of [AEG's] [a]ccounts and list same [in] [s]chedules of [a]ccounts. Upon purchase . . . [the plaintiff] will assume the risk of [nonpayment] on [p]urchased [a]ccounts up to the [i]nitial [p]urchase [p]rice . . . ." The contract further provides that "[the plaintiff] may, but need not purchase from [AEG] such [a]ccounts as [the plaintiff] determines to be [e]ligible [a]ccounts." The language makes clear that the factoring agreement did not constitute an outright sale of AEG's accounts but, rather, it gave to the plaintiff the sole discretion to purchase certain of AEG's accounts if it so desired. Notably, the provisions of the factoring agreement contain no language authorizing the collection the plaintiff seeks here, in the absence of some default by AEG on any of its obligations to the plaintiff. Nowhere does the agreement indicate that either party intended for unpurchased accounts to be subject to collection upon the notice and demand of the plaintiff in the absence of a breach by AEG. Instead, the plaintiff had the discretion to purchase accounts, after which purchase it could then send notice and

collect on the chosen invoices. That is the process which the parties agreed to and followed regarding Bristol Enterprises, LLC's invoices.

With regard to the security agreement, the agreement provides that "as collateral securing the [o]bligations, [AEG] grants to [the plaintiff] a continuing first priority security interest in the [c]ollateral." This provision, viewed in conjunction with the relevant definitions in the agreement, makes clear that AEG has provided a security interest to the plaintiff in all of its accounts receivable, including the account in question, regardless of whether the plaintiff purchased the accounts receivable pursuant to the factoring portion of the agreement. This interest in the accounts receivable secures the performance of AEG's obligations to the plaintiff, whether those obligations are then extant or may come into existence in the future. The agreement's security interest provision, however, has no direct relationship to its separate provisions authorizing the plaintiff to purchase certain accounts and collect on those debts. In short, the security agreement provisions and the factoring agreement provisions, although included in the same agreement, appear to operate independently. Accordingly, we conclude that the agreement between AEG and the plaintiff does not directly assign the account receivable at issue in the present appeal to the plaintiff beyond the interest created by the security agreement.

### B

We next address the plaintiff's argument that the language of § 42a-9-406 referring to an "assignee" authorizes the plaintiff's collection on the invoice in this matter. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . [General Statutes §] 1-2z directs this court to first consider the text of the statute and its relationship to other statutes to determine its meaning. If, after such consideration, the meaning is plain and unambiguous and does not yield absurd or unworkable results, we shall not consider extratextual evidence of the meaning of the statute. . . . Only if we determine that the statute is not plain and unambiguous or yields absurd or unworkable results may we consider extratextual evidence of its meaning such as the legislative history and circumstances surrounding its enactment . . . the legislative policy it was designed to implement . . . its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." *Wozniak* v. *Col-*

*chester*, 193 Conn. App. 842, 858–59, 220 A.3d 132, cert. denied, 334 Conn. 906, 220 A.3d 37 (2019).

The plaintiff argues that it is the "assignee" to which the language of § 42a-9-406 refers and, pursuant to its status as the assignee of the security interest in AEG's accounts receivable, it is entitled to payment by the defendant on the invoice. The defendant rejects this position on the basis that the plaintiff's security interest in AEG's accounts would entitle the plaintiff only to payment by the defendant in the event that AEG breached its obligations to the plaintiff, triggering the security interest and allowing the plaintiff to foreclose.[6] The defendant further disagrees with the plaintiff's interpretation of the term "assignee" in this context, and argues that although the plaintiff was assigned a security interest in all of AEG's accounts receivable, including that of the defendant, there was no assignment of *the amount due or to become due* such as to trigger the payment provision in § 42a-9-406. We agree with the defendant.

Section 42a-9-406 provides in relevant part that "an account debtor on an account, chattel paper or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that *the amount due or to become due* has been assigned and that payment is to be made to the *assignee*. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor. . . ." (Emphasis added.)

First, the statutory language is not vague or ambiguous. Therefore, we need not consider legislative history in order to ascertain the meaning of "assignee" and, instead, need only consider its plain meaning. Black's Law Dictionary defines "assignee" as "[s]omeone to whom property rights or powers are transferred by another. Use of the term is so widespread that it is difficult to ascribe positive meaning to it with any specificity. Courts recognize the protean nature of the term and are therefore often forced to look to the intent of the assignor and assignee in making the assignment— rather than to the formality of the use of the term *assignee*—in defining rights and responsibilities." (Emphasis in original.) Black's Law Dictionary (11th Ed. 2019) p. 147. Although in this context we interpret the use of the term "assignee" in the text of a statute, and not only on the basis of the use of the term in the agreement, the understanding that the term "assignee" should be construed in accordance with the context surrounding its usage remains true here. Accordingly, the ordinary meaning of the term "assignee" should be applied to its use in § 42a-9-406.

In that regard, we find it instructive that decisional law in the federal courts previously has interpreted

§ 9-406 of the UCC in a manner consistent with the interpretation asserted by the defendant in this appeal. Here, both parties cite to *Platinum Funding Services, LLC* v. *Petco Insulation Co.*, United States District Court, Docket No. 3:09cv1133 (MRK), 2011 WL 1743417 (D. Conn. May 2, 2011) (*Petco*). The plaintiff argues that *Petco* is inapposite because, in the present case, it relies on a security agreement that exists between the parties to buttress its argument that it was entitled to collect on the defendant's invoice. The defendant argues that *Petco* is squarely on point, and that the plaintiff's security interest in the account in question does not constitute an assignment, as that term is utilized in § 42a-9-406.

*Petco* is factually similar to the present case. *Petco* involved a claim by a factoring company for payment on an account that had not formally been assigned to it through selection and purchase pursuant to the terms of its factoring option agreement. *Petco*, supra, 2011 WL 1743417, *1. In *Petco*, the plaintiff, Platinum Funding Services, LLC (Platinum Funding), a factoring company, sought to recover payments it alleged were owed to it as a result of a factoring agreement with the defendant, Petco Insulation Co., Inc. (Petco Insulation). Id. The relevant factoring agreement was structured similarly to that in the present case, in that it provided Platinum Funding with the option to purchase a number of Petco Insulation's accounts receivable, but included no requirement that Platinum Funding actually do so. Id., *1–2 The plaintiff in *Petco*, like the plaintiff in the present case, sent notice to a third party who had performed work for Petco Insulation—but whose invoice Platinum Funding had not purchased—notifying it of the purported assignment of its account. Id., *2–3. When that third party made payment to Petco Insulation and not to Platinum Funding, Platinum Funding brought an action against the third party seeking to recover the amounts paid to Petco Insulation on the unpurchased invoices. Id., *3. The third party then moved for summary judgment. Id., *4.

The court in *Petco* determined, by a plain reading of the agreement, as well as the use of logic and common sense, that Platinum Funding could not recover from the account debtor on its UCC § 9-406 claim because the right to receive payment on the particular invoices at issue had never actually been assigned to it. Id., *8,*13. Although we acknowledge that the plaintiff in *Petco* did not rely on any security interest to justify its claim of entitlement to payment from the account debtor, the logic underpinning the court's ruling is readily apparent.[7] Notably, the reasoning and conclusion of *Petco*—that a creditor who has not been assigned a particular receivable has no right to the proceeds from that account—have been widely followed in other jurisdictions. See *Forest Capital, LLC* v. *BlackRock, Inc.*, 658 Fed. Appx. 675, 680–81 (4th Cir. 2016) ("[t]he

language of UCC § 9-406 . . . presumes that an assignor has already assigned its rights to receive payment from an account debtor to an assignee" (internal quotation marks omitted)); *First Bank & Trust* v. *Coventina Construction Corp.*, United States District Court, Docket No. 18-civ-6648 (NGG) (VMS), 2019 WL 4120363, *5 n.4 (E.D.N.Y. July 23, 2019) ("[p]laintiff has standing to bring the account stated claim because the rights to and amount owed under the relevant invoices *were assigned* to [the plaintiff]" where "[t]he [f]actoring [a]greements *transfer all legal and equitable title* in the accounts to [the] plaintiff" (emphasis added; internal quotation marks omitted)); *Durham Commercial Capital Corp.* v. *Select Portfolio Servicing, Inc.*, United States District Court, Docket No. 3:14-cv-877-J-34 (PDB), 2016 WL 6071633, *16 (M.D. Fla. October 17, 2016) ("Of course, if the assignee did not in fact receive an assignment, the account debtor cannot discharge its obligation by paying a putative assignee who is a stranger. . . . That statement suggests what common sense also dictates—that a notice of assignment obligates an account debtor to pay the purported assignee only to the extent there is an actual, valid assignment from the assignor." (Citation omitted; internal quotation marks omitted.))..

We agree with the interpretation of § 9-406 of the UCC adopted by the learned judge in *Petco* that, in order for a factoring company to collect on an account receivable, it must have purchased that account, or actually have been assigned its ownership, pursuant to the relevant factoring agreement. Section 42a-9-406 clearly states that the duty placed upon an account debtor to discharge its debt by paying the assignee, as opposed to the assignor, hinges on "the amount due or to become due [being] assigned . . . ." Our interpretation of "assignee" within the context of § 42a-9-406 necessarily requires consideration of the language that precedes that term. The phrase "due or to become due" makes clear that, for the "assignee" to become the party to whom payment must be made, the amount of that payment—which is either currently due, or will become due in the future—is what must be assigned to the "assignee."

As discussed, the plaintiff's interpretation of the term "assignee" within the statute relies on its status as an assignee of the security interest in AEG's accounts receivable pursuant to the security agreement. The UCC, as adopted by our legislature, defines a security interest, in part, as an interest in personal property or fixtures which secures payment or performance of an obligation. General Statutes § 42a-1-201 (35). Here, the agreement provided collateral to the plaintiff in the form of AEG's accounts receivable as security for the performance of its obligations, then or in the future, to the plaintiff. Consequently, the plaintiff had a *collateral* interest in the receivable due to AEG from the defen-

dant. Accordingly, the plaintiff is correct that, pursuant to the security agreement, it is an "assignee" of the secured interest in AEG's accounts.

The plaintiff, however, incorrectly imports its status as an assignee of the security interest into the term "assignee" as used in § 42a-9-406, which, as we have noted, unambiguously refers to an assignee of an amount due or to become due to the assignor—which is not a proper characterization of the defendant's invoice in the present case. No amount due on the subject account by the defendant was assigned to the plaintiff. Rather, that account, along with other accounts due to AEG and not purchased by the plaintiff, served only as collateral securing the plaintiff's rights against any default by AEG of its obligations to the plaintiff. Moreover, there is no evidence or claim that AEG defaulted on any of its obligations pursuant to the agreement, which would have been a precondition to the plaintiff's right to seek satisfaction from this receivable due from the defendant to AEG. In sum, the fact that the plaintiff has been "assigned" a security interest does not assign any present interest in the defendant's accounts receivable.

The plaintiff asserts, however, that it sent a notice of assignment of this account to the defendant. That claim lacks merit. The fact that a notice of assignment has been sent, alone, is not sufficient to trigger repayment to the factoring company. See *CapitalPlus Equity, LLC* v. *Glenn Rieder, Inc.*, United States District Court, Docket No. 17-CV-639 (JPS), 2018 WL 276352, *4 (E.D. Wis. January 3, 2018) (noting, in case in which no formal documentation of sale of accounts receivable exists, that "the notice . . . sent to [the account debtor] demanding payment would have no force or effect unless the accounts had actually been assigned to it"). Thus, we conclude that in attempting to equate its security interest in the defendant's receivable with actual assignment of ownership of the account, the plaintiff is legally incorrect and, as a result, the court properly granted the defendant's motion for summary judgment.

II

Finally, the plaintiff claims that the court erred in denying its motion for summary judgment. Ordinarily, the denial of a motion for summary judgment is not an appealable judgment. See, e.g., *Westbrook* v. *ITT Hartford Group, Inc.*, 60 Conn. App. 767, 774–75, 761 A.2d 242 (2000). Because, however, the court granted the defendant's motion for summary judgment and, accordingly, the plaintiff was not afforded the opportunity of a full trial on the merits, this claim is properly before us. See *Kindred Nursing Centers East, LLC* v. *Morin*, 125 Conn. App. 165, 169–70, 7 A.3d 919 (2010).

The court denied the plaintiff's motion for summary

judgment because it determined that there was no genuine issue of material fact that the plaintiff was never assigned any specific legal right to recover on the specific invoice related to the alleged misdirected payment. On the basis of our analysis as set forth in part I of this opinion determining that an actual assignment of the amount due or to become due is a precondition to collecting on an invoice pursuant to § 42a-9-406, we agree with the court that there is no genuine issue of material fact that the requisite assignment of the defendant's invoice never occurred. Accordingly, we affirm the court's denial of the plaintiff's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In the underlying litigation, the plaintiff brought claims against two additional defendants, Bristol Enterprises, LLC, and Maynard Road Corporation. On August 28, 2017, the plaintiff withdrew its claims as to those parties and withdrew counts one and two of the complaint. Accordingly, we refer to the Housing Authority for the City of Meriden as the defendant in this appeal.

[2] The trial court found that "[f]actoring is a process wherein one business— a factoring firm, purchases accounts receivable from another business at a discounted price and in exchange, the factoring firm advances working capital. See *Forest Capital, LLC* v. *BlackRock, Inc.*, 658 Fed. Appx. 675, 677 (4th Cir. 2016); *Brookridge Funding Corp.* v. *Northwestern Human Services*, 175 F. Supp. 2d 355, 358 (D. Conn. 2001)." Although our understanding of a factoring agreement, generally, does not differ from that of the trial court, the agreement in the present case provided the plaintiff only an option to purchase certain of the defendant's receivables.

[3] The agreement defines an "[e]ligible [a]ccount" as "an [a]ccount that is acceptable for purchase as determined by [the plaintiff] in the exercise of its reasonable sole credit or business judgment." (Internal quotation marks omitted.)

[4] General Statues § 42a-9-406 (a) provides in relevant part: "an account debtor on an account . . . may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor. . . ."

[5] The notice sent to the defendant on September 19, 2016, read in relevant part: "AEG of New England, LLC has assigned all of its present and future accounts receivables to FACTOR KING, LLC . . . . Enclosed is AEG of New England, LLC's Notice of Assignment and Change of Payee confirming this assignment. FACTOR KING has a perfected first security interest in all of AEG of New England, LLC's accounts receivables pursuant to the attached UCC-1 Financing Statement. All checks and other payments for any monies owed by you to AEG of New England, LLC, for any reason including materials provided or work performed by AEG of New England, LLC for you on any construction project now or in the future, must be made payable only to FACTOR KING, LLC . . . ." (Emphasis omitted.)

[6] The plaintiff makes no claim of breach on the part of AEG, and is not seeking to foreclose on the security interest in the present case.

[7] The court in *Petco* alludes, in a footnote, to the existence of a security agreement between the parties, stating, in relevant part: "The First Agreement included a number of other terms which may be relevant later on in this case. For example, it provided that if Petco Insulation . . . 'receive[d] any collections or other proceeds of the [a]ccounts [r]eceivable assigned to Platinum [Funding], [s]ellers shall immediately deliver such payments . . . to Platinum [Funding],' and that '[f]ailure to deliver such payments shall be deemed a default' on related security agreements with Platinum Funding. . . . However, Platinum Funding has not made any arguments based on those other terms in opposition to the pending motion. Nor has it made any arguments based on the terms in the related security agreements. The [c]ourt therefore need not examine them in further detail here." *Petco,*

supra, 2011 WL 1743417, *2 n.1.

The language of the footnote reveals that the relevant agreement or agreements between Petco Insulation and Platinum Funding likely contained a similar security agreement to the one at issue in the present case. Because the factoring company in *Petco* did not rely on the security provisions to justify its right to collect on the accounts, however, the court in *Petco* offered no guidance as to the merits of doing so.

––––––––––––––––––––––––––––––––