■ IIG Capital LLC, Appellant-Respondent, v Archipelago, L.L.C., et al., Respondents-Appellants. [829 NYS2d 10]—

Order, Supreme Court, New York County (Charles Edward Ramos, J.), entered January 3, 2005, which granted defendants' CPLR 3211 (a) (7) motion to the extent of dismissing plaintiff's causes of action based on quantum meruit and unjust enrichment, and denied dismissal of the breach of contract and account stated causes of action, modified, on the law, the motion denied with respect to the causes of action based on quantum meruit and unjust enrichment and those causes of action reinstated, and otherwise affirmed, without costs.

In this action by a factor to collect on accounts receivable, the account debtors' motion to dismiss the causes of action for breach of contract and account stated was properly denied. Where the parties submit extrinsic evidence in connection with a CPLR 3211 (a) (7) motion to dismiss the complaint and the court declines to treat the motion as one for summary judgment under CPLR 3211 (c), the appropriate standard of review " 'is whether the proponent of the pleading has a cause of action, not whether he has stated one' " (*Leon v Martinez*, 84 NY2d 83, 88 [1994], quoting *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]).

Under New York's Uniform Commercial Code § 9-406 (a), an account debtor may discharge an obligation "by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee" (*see generally General Motors Acceptance Corp. v Clifton-Fine Cent. School Dist.*, 85 NY2d 232 [1995] [interpreting former UCC 9-318 (3), predecessor to UCC 9-406 (a)]). Here, plaintiff's complaint alleges that in August 2002, it notified defendants by letter that all of assignor MarketXT's accounts, which included defendants' accounts, had been assigned to plaintiff and that subsequent payments on the account should be made to plaintiff at a specified address.[1] Accompanying plaintiff's letter were invoices that referenced these accounts and were prominently stamped with a similar notice of assignment and direction that payment be made to plaintiff in the future. Defendants deny receipt of the letter and invoices, and alternatively argue that such notice, even if received, was insufficient under the Uniform Commercial Code. We disagree.

Defendants' denial of receipt does not afford a basis for dismissal, given the clear factual dispute raised by the affidavit of plaintiff's comptroller stating that his office mailed these specific documents to plaintiff's correct address, with Federal Express receipts offered as proof of mailing. We also reject defendants' argument that the notice of assignment provided by plaintiff was inadequate under UCC 9-406 (a). Collectively, the letter and the invoices reasonably identified the accounts assigned and clearly instructed that payment on the invoices be redirected to plaintiff (see *Capital Factors v Caldor, Inc.*, 182

---

1. The letter, signed by plaintiff's managing director, specifically instructed: "To the extent that you are now indebted or may in the future become indebted to [MarketXT] on an account or general intangible, payment thereof is to be made payable to us and not the client or any other entity. Payment in any other way will not discharge this obligation."

AD2d 532 [1992]; *Hamilton Group [Delaware] v Ballard Spahr Andrews & Ingersoll*, 1 AD3d 969 [2003]). Nor was the notice rendered inadequate as a matter of law because the August 2002 letter was not dated and was addressed to "Ladies and Gentlemen." The Federal Express receipts submitted in opposition to the motion, while not conclusively demonstrating delivery, suffice to support plaintiff's allegation that notice of the assignment was provided to defendants on the specified dates. Defendant Redibook also denies receiving notice on the ground that it had already been merged into another company on the date of the mailing. However, the Federal Express receipt shows that the mailing was signed for by a representative of Redibook, which strongly indicates that notice was received. Moreover, if defendants or their employees had any doubt as to the import of the assignment notices and invoices they signed for, the UCC provides a mechanism whereby the account debtor may require that the assignee "furnish reasonable proof that the assignment has been made" (UCC 9-406 [c]). Defendants made no such request.

Defendants' assertions that plaintiff's complaint failed to allege an outright purchase or assignment of defendants' accounts, or that plaintiff's allegation of such purchase is flatly contradicted by the subject factoring agreement, are without merit. Plaintiff's complaint included the express allegation that "[i]n accordance with the Factoring Agreement, MarketXT assigned all of its rights, title and interest in and to its accounts with defendants to IIG." In addition, plaintiff's comptroller expressly alleged a purchase of defendants' accounts in an affidavit submitted in opposition to the motion. Such allegations were more than sufficient to allege a purchase.

Although defendants correctly note that the factoring agreement does not require the purchase of all of MarketXT's accounts, but only those listed on a schedule of accounts, no such schedule has been provided by either party.[2] In light of this circumstance, we find that defendants have failed to meet their burden of producing evidence that clearly refutes plaintiff's allegation that defendants' accounts were purchased by plaintiff pursuant to the factoring agreement (*see Leon*, 84 NY2d at 87-88; *see also Guggenheimer*, 43 NY2d at 275 ["unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant

---

2. Although defendants submitted a list of MarketXT accounts which identifies their own accounts with MarketXT as "Non-Factor," they do not argue that this list is the "Schedule of Accounts" referred to in the factoring agreement between plaintiff and MarketXT.

dispute exists regarding it, . . . dismissal should not eventuate"]; *cf. Griffin v Anslow*, 17 AD3d 889, 892-893 [2005] [conclusory allegation of attorney-client relationship in malpractice action did not defeat attorney's conclusive documentary evidence showing absence of privity]).

That defendants reached a $3.1 million settlement in 2003 with MarketXT regarding these same accounts does not warrant a different result. If, as alleged, defendants' accounts with MarketXT were assigned to plaintiff pursuant to the factoring agreement, and proper notice was given, defendants' payment in settlement to MarketXT would not be a defense to an action by plaintiff to collect on the accounts (*cf. General Motors Acceptance Corp.*, 85 NY2d at 236 ["after the account debtor receives notification that the right has been assigned and the assignee is to be paid, and it continues to pay the assignor, the account debtor is liable to the assignee and the fact that payment was made to the assignor is not a defense in an action brought by the assignee"]).

We reject, however, plaintiff's alternative claim that it is authorized to collect on defendants' accounts by virtue of the security interest granted to it under the factoring agreement. Paragraph 8.1 (b) of the agreement provides that plaintiff's right to collect on the collateral is expressly conditioned on an event of default, and no such default is alleged in the complaint.

Plaintiff also argues that a secured party with a security interest is the equivalent of an assignee for purposes of UCC 9-406. However, the cases plaintiff cites for this proposition do not support it. The cited cases deal with a distinct section of the UCC (former UCC 9-318 [1]), which provided that unless otherwise agreed, the rights of an assignee are subject to the terms of the original contract between the account debtor and assignor, including any defenses authorized therein (*see e.g. Bank of Waunakee v Rochester Cheese Sales, Inc.*, 906 F2d 1185, 1189-1190 [7th Cir 1990]; *Fleet Capital Corp. v Yamaha Motor Corp, U.S.A.*, 2002 WL 31174470, *27-28, 2002 US Dist LEXIS 18115, *94-96 [SD NY 2002]; *PHD, Inc. v Coast Bus. Credit*, 147 F Supp 2d 809, 814, 818 [ND Ohio 2001]). While these cases treat assignees and holders of security interests similarly for purposes of holding them subject to defenses available to the original account debtors, they provide no authority to treat plaintiff's security interest as an assignment for collection purposes under UCC 9-406.

With respect to plaintiff's appeal from the same order, we modify to reinstate plaintiff's causes of action for quantum meruit and unjust enrichment. "While the existence of a valid and

enforceable contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388 [1987]), where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, plaintiff may proceed upon a theory of quantum meruit and will not be required to elect his or her remedies (*Joseph Sternberg, Inc. v Walber 36th St. Assoc.*, 187 AD2d 225, 228 [1993])" (*American Tel. & Util. Consultants v Beth Israel Med. Ctr.*, 307 AD2d 834, 835 [2003]).

Given the existing, unresolved dispute regarding whether defendants' accounts were among those assigned to plaintiff pursuant to the factoring agreement, and thus, whether the express factoring agreement covers the dispute in issue, dismissal of the quasi contract causes of action at this juncture was premature (*see id.*).

We reject the motion court's implicit finding that, with regard to the viability of the quasi contract claims, the only relevant express contract is that between MarketXT and defendants. Because plaintiff's right to recover in this action depends not only on that contract *but also* the factoring agreement between plaintiff and MarketXT, the ambiguity regarding whether the factoring agreement covers the dispute in issue is a sufficient basis to deny dismissal of the quasi contract claims.

The dissent's argument that plaintiff has abandoned its allegation that it purchased defendants' accounts is incorrect. Plaintiff alleged a purchase of those accounts in its complaint, its comptroller swore under oath that such accounts were purchased, and the purchase allegation was repeated by plaintiff in its opening brief on this appeal. That plaintiff failed to reiterate or highlight this argument in its reply brief on this appeal does not, contrary to the dissent's view, constitute an abandonment of the argument. Rather, given the unequivocal allegations of purchase in plaintiff's complaint and the comptroller's affidavit, it is more likely that plaintiff's counsel utilized his reply brief to address the more tenable arguments raised in defendants' brief. Concur—Saxe, J.P., Marlow, Gonzalez and Catterson, JJ.

McGuire, J., dissents in a memorandum as follows: I respectfully dissent, as I disagree with the majority in two respects. First, in my view plaintiff IIG Capital LLC (IIG) has abandoned on these cross appeals the conclusory allegation in its complaint that it "purchased" from nonparty MarketXT, Inc. (MarketXT) the debts (the Archipelago accounts) owed to MarketXT by

defendants Archipelago, L.L.C. and Archipelago Securities, L.L.C. (collectively, Archipelago). Given IIG's tacit but unmistakable concession in the reply brief it filed with this Court that it did not "purchase" the Archipelago accounts, the only remaining question on Archipelago's appeal is whether IIG, by virtue of the security interest it obtained in the accounts receivable of MarketXT, is entitled to collect on the accounts from Archipelago. Here, I agree with the majority that, despite IIG's claim that as a secured party it is an assignee of MarketXT, IIG is not entitled to collect on the Archipelago accounts. As the majority correctly recognizes, under the factoring agreement IIG's "right to collect on the collateral is expressly conditioned on an event of default, and no such default is alleged in the complaint." For this reason, and because IIG has abandoned the only other allegation that could sustain its first, second, fifth and sixth causes of action, Archipelago's motion to dismiss those causes of action should have been granted.[1] Second, I disagree with the majority's determination to reinstate the other causes of action for quantum meruit and unjust enrichment. In my view, IIG's inability to allege anything more than a security interest in the Archipelago accounts of MarketXT is equally fatal to these causes of action.

In paragraph 10 of its complaint, IIG alleged as follows: "10. On or about July 16, 2002, MarketXT and IIG entered into a Factoring and Security Agreement dated July 16, 2002, as amended by First Amendment of Factoring and Security Agreement, whereby IIG purchased the Accounts of MarketXT ('Factoring Agreement'). A copy of the Factoring Agreement is annexed hereto as Exhibit 1." However, as Archipelago stressed in its opening brief filed with this Court, the factoring agreement makes clear that IIG did not purchase any of MarketXT accounts receivable merely by executing the agreement. To the contrary, the agreement specified that MarketXT (denominated the "Seller"): "*shall submit* for sale to Purchaser [IIG] as absolute owner, all of Seller's Accounts *as listed from time to time on Schedules of Accounts. Upon purchase,* Purchaser will assume the risk of non-payment" (emphasis added). Furthermore, the factoring agreement defines the term "Schedule of Accounts" as "a form supplied by Purchaser from time to time wherein Seller lists such of its Accounts as it *requests* that

---

1.  The first and fifth causes of action allege breaches by, respectively, Archipelago, L.L.C. and Archipelago Securities, L.L.C., of obligations to pay MarketXT for services it provided to each entity. The second and sixth causes of action, for accounts stated, allege that Archipelago, L.L.C. and Archipelago Securities, L.L.C. received and accepted without objection statements of account rendered by MarketXT.

Purchaser purchase under the terms of this Agreement" (emphasis added).

That the factoring agreement provided a mechanism by which IIG could purchase accounts of MarketXT but did not itself effect the purchase of any of MarketXT's accounts receivable is hammered home by other provisions of the factoring agreement. Thus, the agreement stipulates that "Purchaser *may purchase in its sole discretion* from Seller such Accounts as Purchaser determines to be Eligible Accounts" (emphasis added), and defines the term "Eligible Account" as one "which *is acceptable for purchase as determined by Purchaser* in the exercise of its reasonable sole credit or business judgment" (emphasis added).

As Archipelago also stressed in its opening brief, by annexing the factoring agreement to its complaint, IIG "made the contract a part of its pleading for all purposes" (*805 Third Ave. Co. v M.W. Realty Assoc.*, 58 NY2d 447, 451 [1983] [citations omitted]). Moreover, the "provisions [of the contract] establish the rights of the parties and prevail over conclusory allegations of the complaint" (*id.* [citations omitted]). In addition, Archipelago stressed as well that IIG did not allege in its complaint that the Archipelago accounts were contained in or listed on a "Schedule of Accounts" as the factoring agreement required when accounts of MarketXT were to be purchased by IIG. The absence of such an allegation also is significant (*id.* at 452 [affirming grant of defendant's motion to dismiss under CPLR 3211 (a) (7) and observing that although plaintiff's contractual rights were conditioned on its having performed certain acts, "(p)laintiff does not contend, nor has it pleaded, that it did any of these things"]).

The majority concludes that Archipelago has failed to meet its burden of producing evidence that "clearly refutes" the allegation of the complaint that "[Archipelago's] accounts were purchased by [IIG] pursuant to the factoring agreement." The complaint, however, does not make any allegation about the purchase of Archipelago's or any other entity's accounts with MarketXT "*pursuant to*" the factoring agreement. Rather, the complaint alleges that "MarketXT and IIG entered into a Factoring . . . Agreement . . . *whereby* IIG purchased the Accounts of MarketXT" (emphasis added).

Thus, the complaint alleges a legal conclusion about the factoring agreement, namely, that by virtue of the execution of the factoring agreement IIG purchased the accounts of MarketXT. That allegation is clearly refuted by the terms of the factoring agreement, which establish that none of MarketXT's

accounts were purchased by the mere execution of the agreement. Here, as in *805 Third Ave. Co.*, the "provisions [of the contract] . . . prevail over conclusory allegations of the complaint" (*805 Third Ave. Co. v M.W. Realty Assoc.*, 58 NY2d 447, 451 [1983]); IIG has not pleaded matters essential to its recovery under the contract—i.e., that the Archipelago accounts were listed on a "Schedule of Accounts" submitted to it by MarketXT—(*id.* at 452); "this action is controlled by the contract annexed to the complaint" (*id.* at 453); and "[t]here is no dispute about the facts, only a dispute of law concerning the interpretation of that instrument" (*id.*).[2]

In any event, IIG's abandonment on appeal of the lone and conclusory allegation of paragraph 10 of the complaint that it "purchased" the accounts of MarketXT by entering into the factoring agreement is an independent reason to disregard it. In its reply brief, IIG did not take issue with Archipelago's contention that this allegation had to be disregarded because it was a conclusory allegation that was contradicted by the terms of the very factoring agreement IIG had annexed to its complaint. Indeed, IIG did not discuss *805 Third Ave. Co.* or any of the other cases cited by Archipelago in support of its position that the allegation had to be disregarded.

In fact, in its reply brief, IIG did not even mention this allegation of paragraph 10. Nor did it mention the equally conclusory allegation that IIG had "purchased" the accounts of MarketXT made by its comptroller in opposing Archipelago's motion to dismiss. In fact, it all but expressly disavowed the comptroller's allegation.[3] Rather than make any attempt to defend the allegation that it had "purchased" the Archipelago accounts, IIG placed all its eggs in a different basket by contending that it

---

2. The majority notes that no schedule of accounts listing the Archipelago accounts "has been provided by either party," and concludes that this "circumstance" supports its position that Archipelago failed to meet its burden on its motion to dismiss. The majority, however, offers no factual basis for its unstated assumption that Archipelago, for some reason, would have copies of any such schedules that may have been exchanged between IIG and MarketXT.

3. In his affidavit, the comptroller makes reference to the allegations of paragraph 15 of the complaint that "[i]n accordance with the Factoring Agreement, MarketXT assigned all of its rights, title and interest in and to its accounts with defendants to IIG." The comptroller immediately went on to assert that "[t]he Accounts referred to in this paragraph [15] include, as defined in the Factoring Agreement, Defendants' Accounts *which were purchased* by IIG." In its reply brief, however, IIG pointed only to the comptroller's reliance on the allegation of paragraph 15 of an assignment and to the comptroller's assertion that the referenced accounts include the Archipelago accounts. IIG's failure to mention the comptroller's assertion in the same sentence that such accounts had been "purchased" by IIG is certainly not an oversight.

was an assignee of MarketXT's accounts, including the Archipelago accounts, by virtue of the factoring agreement.

Understandably, in the reply brief that Archipelago submitted on its appeal after IIG's reply brief on its appeal, Archipelago urges that IIG admitted in its reply brief that it never purchased the Archipelago accounts. Regardless of whether IIG actually made such an admission, it is clear that on this appeal IIG is not standing behind the allegation of paragraph 10 that it purchased the Archipelago accounts. Accordingly, this Court should not stand behind it either.[4]

For essentially the same reason, that is, IIG has alleged only that it has a security interest in the Archipelago accounts, IIG's causes of action for quantum meruit and unjust enrichment, the third, fourth, seventh and eighth causes of action, also should be dismissed. With these causes of action, IIG seeks to stand in the shoes of MarketXT, the creditor of Archipelago. The factoring agreement, however, authorizes IIG to stand in the shoes of MarketXT only in the event of a default. Because no such default is alleged, IIG has no standing to assert quantum meruit and unjust enrichment claims—or, for that matter, account stated claims—against Archipelago. IIG, of course, did not deal or trade with Archipelago. In other words, IIG is essentially a stranger to the very relationships between MarketXT and Archipelago that might permit MarketXT to bring quasi contract claims against Archipelago.

Accordingly, I would modify the order of Supreme Court by granting the motion to dismiss the breach of contract and account stated causes of action.

4. Apart from citing to the allegation by IIG's comptroller that IIG all but expressly disavowed—that it had "purchased" the accounts of MarketXT—the majority cites the allegation of paragraph 15 that "[i]n accordance with the Factoring Agreement, MarketXT assigned all of its rights, title and interest in and to its accounts with defendants to IIG." This allegation by IIG that it is the assignee of MarketXT, however, is nothing more than a legal conclusion by IIG that as the holder of a security interest in MarketXT's accounts it is an assignee for purposes of UCC 9-406. That the majority would cite to it is curious. After all, as the majority correctly recognizes, that conclusion is not defensible.