[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15572

_____

D.C. Docket No. 9:15-cv-80200-KAM


DURHAM COMMERCIAL CAPITAL CORP.,

Plaintiff - Appellee,

versus

OCWEN LOAN SERVICING, LLC,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 29, 2019)

Before JILL PRYOR and BRANCH, Circuit Judges, and REEVES,* District
Judge.

_____

      * Honorable Danny C. Reeves, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

PER CURIAM:

In this diversity case, Durham Commercial Capital Corporation sued Ocwen Loan Servicing, LLC, alleging a single claim: that Ocwen violated § 9-406(a) of New York's Uniform Commercial Code. At trial, Ocwen moved for judgment as a matter of law, arguing that § 9-406(a) did not give Durham a private right of action. The district court denied the motion. The jury found in favor of Durham and awarded it $1,138,626.74 in damages. We agree with Ocwen that § 9-406(a) afforded Durham no private right of action. We therefore reverse the district court's denial of Ocwen's motion for judgment as a matter of law, vacate the jury's verdict, and direct the district court to enter judgment in Ocwen's favor.

## I.    BACKGROUND

### A.    Factual Background

Ocwen services mortgage loans. When Ocwen forecloses on a loan, it hires a lawyer or law firm to perform foreclosure-related services. Ocwen entered into a Counsel Agreement with one such firm, Connolly, Geaney, Ablitt & Willard, P.C. ("CGAW").[1] In the Counsel Agreement, CGAW promised to remit funds from foreclosure sales to Ocwen, and Ocwen promised to pay CGAW for services rendered.

---

[1] At the time Ocwen entered into the Counsel Agreement, it was with a predecessor firm, Ablitt Scofield. Neither party argues that the change from Ablitt Scofield to CGAW has any effect on this case. Because the parties do so in their briefs, we refer to the firms collectively as "CGAW."

2

CGAW and Durham entered into a Nonrecourse Receivables Purchase Contract and Security Agreement ("Factoring Agreement"), whereby Durham purchased certain accounts receivable from CGAW and retained a security interest in all of CGAW's accounts.  Durham claims that the Factoring Agreement entitled it to payments for invoices that Ocwen owed to CGAW for legal services.  Durham sent Ocwen a notice informing Ocwen that "the accounts receivable of [CGAW] ha[d] been assigned to Durham" and that "payments for invoices should be made payable to and mailed directly to" Durham.  Doc. 231-1.[2]

After receiving the notice, Ocwen nevertheless continued to pay CGAW's invoices to CGAW instead of Durham.  These post-notice payments to CGAW totaled $1,340,865.21.  CGAW turned over $202,238.47 of this amount to Durham.  Durham contends that it should have received an additional $1,138,626.74 that Ocwen paid to CGAW.

## B.     Procedural History

After CGAW declared bankruptcy, Durham brought this action against Ocwen to recover the funds that Ocwen paid CGAW after receiving Durham's notice of assignment.  The complaint alleged a single cause of action, "Breach of the Statutory Duty to Pay Accounts," based on an alleged violation of New York Uniform Commercial Code § 9-406(a).  Doc. 1 at 4.  The case proceeded to trial on

---

[2] Citations in the form "Doc. #" refer to numbered entries on the district court's docket.

that claim.  At the close of Durham's case, Ocwen filed a combined motion to dismiss and for judgment as a matter of law.  In this motion, Ocwen argued that the district court should dismiss the case for lack of subject-matter jurisdiction because § 9-406(a) did not afford Durham a private right of action.  Ocwen renewed its motion to dismiss and for judgment as a matter of law after it rested its case.  The only theory of liability on which the district court instructed the jury was § 9-406(a)—the only theory for which Durham had proposed jury instructions.  Before the district court ruled on Ocwen's motions, the jury returned its verdict in favor of Durham, awarding Durham $1,138,626.74 in damages.[3]  The district court then denied Ocwen's motion and renewed motion.  After the entry of judgment, Ocwen filed a post-verdict motion for judgment as a matter of law or, alternatively, for new trial or remittitur, again arguing that § 9-406(a) creates no private right of action.  The district court denied Ocwen's motion.  This appeal followed.

## II.    STANDARD OF REVIEW

We review *de novo* an order denying a motion for judgment as a matter of law.  *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007).  "[A] party's motion for judgment as a matter of law can be granted at the close of evidence or, if timely renewed, after the jury has returned its verdict, as long as

---

[3] In addition, the jury awarded Ocwen a $5,000.00 setoff.  The setoff related to Ocwen's claim that CGAW failed to remit to Ocwen funds from several foreclosure sales as required by the Counsel Agreement.

4

there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Id.* (internal quotation marks omitted).

## III.   DISCUSSION

Ocwen argues that the district court erred in denying its combined motion to dismiss and for judgment as a matter of law because § 9-406(a) of New York's Uniform Commercial Code ("U.C.C.") affords Durham no private right of action. Ocwen argues in the alternative that to the extent a private right of action exists under § 9-406(a), no such right of action extends to Durham because Durham failed to introduce evidence establishing that it was ever "assigned" the account. According to Ocwen, any right of action that exists under § 9-406(a) extends only to assignees and not secured parties like Durham.

Durham responds that § 9-406(a) affords a right of action to both assignees and secured parties. Durham argues that "[t]he security interest that [it] received via the Factoring Agreement was sufficient—and all that was required—to enable [it] to qualify as an assignee and to give rise to Ocwen's statutory duty under Section 9-406 to pay Durham after having been notified of the assignment." Appellee's Br. at 37. Durham's counsel conceded at oral argument that Durham failed to introduce at trial any evidence that CGAW assigned the Ocwen account to Durham. Counsel acknowledged that Durham could sustain its verdict only if § 9-406(a) affords secured parties a private right of action.

5

We conclude that § 9-406(a) does not afford secured parties[4] like Durham a private right of action.  Under New York law, a statute may either expressly provide or fairly imply a private right of action for a class of plaintiffs.  *See Sheehy v. Big Flats Cmty. Day, Inc.*, 541 N.E.2d 18, 20 (N.Y. 1989).[5]  Section 9-406(a) does neither for secured parties.  Because this conclusion is case-dispositive, we do not discuss the other arguments Ocwen raises on appeal.

## A.

We begin our analysis by considering whether New York's U.C.C. expressly affords a secured party like Durham a private right of action.  According to Durham, New York's U.C.C. expressly affords secured parties a private right of action through two statutes:  N.Y. U.C.C. §§ 1-305(b) and 9-406(a).  We first examine the text of § 9-406(a), which provides that:

> [A]n account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its

---

[4] New York's U.C.C. defines a "secured party" in part as "a person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding."  N.Y. U.C.C. § 9-102(73)(A).  A "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation."  *Id.* § 1-201(35).

[5] We apply New York law because, by taking the position that New York law applies, Ocwen has abandoned any argument that another state's law should law apply.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("[I]ssues not briefed on appeal . . . are deemed abandoned.").

obligation by paying the assignee and may not discharge the obligation by paying the assignor.

N.Y. U.C.C. § 9-406(a).  New York's U.C.C. defines an "account debtor" as "a person obligated on an account, chattel paper, or general intangible."  *Id.* § 9-102(a)(3).  Under the Counsel Agreement, Ocwen was obligated to pay CGAW money for services rendered.  Thus, its obligation was a "payment intangible," which is "a general intangible under which the account debtor's principal obligation is a monetary obligation."[6]  *Id.* § 9-102(a)(61).

Putting these definitions to use, § 9-406(a) provides that a person who owes a payment intangible (the account debtor) may satisfy the obligation by paying the creditor (the assignor) until some third party (the assignee) notifies the account debtor that the assignor has assigned to the third party the right to collect payment. Once the account debtor receives this notification, the account debtor no longer may satisfy the obligation by paying the assignor but must instead pay the assignee.  Durham argues that § 9-406(a) and another provision of New York's U.C.C., § 1-305(b), operate together to create an express private right of action for violations of § 9-406(a).

---

[6] A "general intangible" includes "any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction."  N.Y. U.C.C. § 9-102(a)(42).

7

Section 1-305(b) expressly creates a private a right of action for "[a]ny right or obligation declared by [New York's U.C.C.] . . . unless the provision declaring it specifies a different and limited effect." N.Y. U.C.C. § 1-305(b). The question then becomes whether § 9-406(a) expressly creates "[a]ny right or obligation" in favor of a secured party against an account debtor. We conclude that it does not. Section 9-406(a) makes no mention of secured parties. To the extent that § 9-406(a) creates a private right of action for a party with a security interest, rather than an assignment, then, such a right must be implied.

**B.**

We next consider whether § 9-406(a) creates an implied right of action for a secured party against an account debtor. Again, we conclude that it does not.

Under New York law, absent an express private right of action, a right of action exists "only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history." *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 226 (N.Y. 2013) (internal quotation marks omitted). New York courts apply three factors to determine whether a plaintiff has a statutorily implied right of action: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Id.* (internal quotation

8

marks omitted).  The third factor is "the most important," *id.*, because New York

law recognizes that the state's "Legislature has both the right and the authority to

select the methods to be used in effectuating its goals, as well as to choose the

goals themselves."  *Sheehy*, 541 N.E.2d at 21.  New York's highest court has

instructed that "regardless of its consistency with the basic legislative goal, a

private right of action should not be judicially sanctioned if it is incompatible with

the enforcement mechanism chosen by the Legislature or with some other aspect of

the over-all statutory scheme."  *Id.*

Beginning with the third and most important factor, we conclude that

recognizing an implied right of action for a secured party under § 9-406(a) would

be inconsistent with the legislative scheme.  New York's U.C.C. addresses a

secured party's right to collect from an account debtor in a different statute, § 9-

607(a)(3).  Section 9-607(a)(3) provides:  "If so agreed, and in any event after

default, a secured party . . . may enforce the obligations of an account debtor or

other person obligated on collateral and exercise the rights of the debtor with

respect to the obligation of the . . . other person obligated on collateral to make

payment . . . to the debtor."[7]  N.Y. U.C.C. § 9-607(a)(3).  Because § 9-607(a)(3)

---

[7] New York's U.C.C. distinguishes between an "account debtor" and a "debtor."  As earlier stated, the term "account debtor" refers to "a person obligated on an account, chattel paper, or general intangible."  N.Y. U.C.C. § 9-102(a)(3).  In contrast, a "debtor" is either "(A) a person having an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor; (B) a seller of accounts, chattel paper, payment intangibles, or promissory notes; or (C) a consignee."  *Id.* § 9-102(a)(28).

affords a secured party a right of action to enforce the obligations of an account debtor, recognizing a parallel right of action under § 9-406(a) would be inconsistent with the overall legislative scheme. *See Sheehy*, 541 N.E.2d at 22 ("Where the Legislature has not been completely silent but has instead made express provision for civil remedy . . . the courts should ordinarily not attempt to fashion a different remedy . . . on the basis of a different statute, at least where, as here, the two statutes address the same wrong. Indeed, it would be anomalous to infer from its silence that the Legislature intended to permit a private right of recovery based upon [one statute] when that body has . . . adopted a [different] statute on the same subject." (citations omitted)). The third factor therefore militates against recognizing an implied right of action.

As for the first factor, as a secured party, Durham is not one of the class for whose particular benefit § 9-406(a) was enacted. The statute prescribes the actions an account debtor may take before and after receiving a notice of assignment. Thus, the statute benefits account debtors by clarifying how they may discharge assigned debts without simultaneously being obligated to pay both an assignor and an assignee. *See* N.Y. U.C.C. § 9-406 cmt. 2 ("Subsection (a) provides the general rule concerning *an account debtor's right* to pay the assignor until the account debtor receives appropriate notification." (emphasis added)). Because Durham is not an account debtor, it is not an intended beneficiary of § 9-406(a).

10

Considering the second factor, we conclude that recognizing a private right of action would not promote the statute's legislative purpose. The purpose of § 9-406(a) is to set forth the rights of an account debtor as against an assignee before and after notification of assignment. *Chase Manhattan Bank (N.A.) v. State*, 48 A.D.2d 11, 14 (N.Y. App. Div. 1975) ("It is quite plain . . . from a reading of [former § 9-406] in its entirety that its purpose is to protect the rights of an account debtor vis-a-vis an assignee of the original creditor, the assignor."). Whether a secured party like Durham has a right of action against an account debtor is unrelated to § 9-406(a)'s purpose. A construction of § 9-406(a) that afforded a secured party a right of action against an account debtor therefore could not promote the statute's purpose.

Because all three factors counsel against recognizing an implied right of action for secured parties under § 9-406(a), we decline Durham's offer to recognize one. In concluding that § 9-406(a) creates neither an express nor an implied right of action for a secured party, we are unpersuaded by Durham's arguments to the contrary. Durham contends that an "assigned" account includes an account in which the "assignee" has a security interest, irrespective of whether the "assignee" has purchased the account. This may be true for some purposes. *See In re Apex Oil Co.*, 975 F.2d 1365, 1369 (8th Cir. 1992) ("Often, the law will attach a different meaning to the same word depending upon the area of law in

11

which it is being used."). But New York's second-highest court rejected the very argument Durham makes here—that a secured party is an "assignee" for purposes of bringing a claim against an account debtor under § 9-406. In *IIG Capital LLC v. Archipelago, L.L.C.*, 36 A.D.3d 401, 404 (N.Y. App. Div. 2007), a factor sued an account debtor to collect on accounts receivable. 36 A.D.3d at 402. The factor had been granted a security interest under the factoring agreement. *Id.* at 404. The factor argued that a party with a security interest is an "assignee" for purposes of § 9-406. *Id.* The Appellate Division of the New York Supreme Court disagreed, noting that the factor had relied on cases that "treat assignees and holders of security interests similarly for purposes of holding them subject to defenses available to the original account debtors, [but] provide no authority to treat [the factor's] security interest as an assignment for collection purposes under [§] 9-406." *Id.* As a federal court applying state law, we are bound by *IIG Capital LLC*, a decision of New York's intermediate appellate court, "unless there is some persuasive indication that the highest court of the state would decide the issue differently." *Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1210 (11th Cir. 2012) (internal quotation marks omitted). Durham provides no authority suggesting that the New York Court of Appeals would rule differently on this issue.[8]

---

[8] Durham cites at least three cases as supporting its position that an assignee under § 9-406(a) includes a secured party: *In re Apex Oil Co.*, *In re Crawford*, 274 B.R. 798 (B.A.P. 8th Cir. 2002), and *In re Arithson*, 175 B.R. 313 (Bankr. D.N.D. 1994). These cases treat assignees

12

Durham also argues that the district court's error in failing to grant Ocwen's motion for judgment as a matter of law was harmless because the allegations in the complaint and the evidence introduced at trial supported a claim for relief arising from an assignee's rights under the common law and from breach of the Counsel Agreement. But Durham chose to try only a § 9-406(a) claim to the jury. Durham proposed jury instructions on its § 9-406(a) claim only, rather than on common-law claims. Consistent with Durham's proposal, the district court instructed the jury only on the § 9-406(a) claim. We decline Durham's invitation to decide on appeal that the evidence was sufficient to establish a different cause of action than what was presented to the jury.

---

and secured parties the same for some purposes. But none of them considered whether a secured party *that was not an assignee* had a cause of action under § 9-406(a) against an account debtor. *In re Apex Oil Co.* held that "notice of a security interest constitutes notice of an assignment" for the purpose of determining whether an account debtor could assert a setoff defense against a secured party. 975 F.2d at 1367, 1370. But in that case, unlike the instant case, "[n]either of the parties dispute[d] that [the assignor] 'assigned' its present and future accounts receivable to [the secured party] for purposes of security." *Id.* at 1369. Here, Durham has failed to argue that it was an assignee within the meaning of § 9-406(a) because of any rights transferred to it under the Factoring Agreement other than its security interest. We are therefore unpersuaded by *In re Apex Oil Co. In re Crawford* considered whether a secured creditor in a bankruptcy proceeding was entitled to a portion of annuity payments that had been assigned to the creditor and thus has no application to this case. 274 B.R. at 800-01. And *In re Arithson* considered whether a document "couched in the form of an assignment" was sufficient to constitute a security agreement. 175 B.R. at 319-20. But we are not deciding whether an agreement that purports to be an assignment may constitute a security agreement, so this decision, like the other two, fails to persuade us.

Because we conclude that § 9-406(a) creates neither an express nor an implied right of action for a secured party,[9] the district court erred in denying Ocwen's motion for judgment as a matter of law. This case never should have reached the jury; we therefore vacate the jury's verdict. Having vacated the verdict and judgment, we need not address the setoff awarded to Ocwen. Further, our conclusion that § 9-406(a) gives Durham no right of action means we have no reason to reach the remaining issues Ocwen raises on appeal.

## IV.    CONCLUSION

We reverse the district court's denial of Ocwen's motion for judgment as a matter of law, vacate the jury's verdict, and remand for the district court to enter judgment in favor of Ocwen.

**REVERSED, VACATED, and REMANDED**

---

[9] To be clear, our conclusion in this case applies only to secured parties that are not assignees within the meaning of § 9-406(a).

14