# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 86
Worthy Lending LLC,
    Appellant,
      v.
New Style Contractors, Inc.,
    Respondent.

Richard G. Haddad, for appellant.
Glenn P. Berger, for respondent.
The Secured Finance Network, Inc., amicus curiae.

WILSON, J.:

We are called upon to determine whether, for purposes of New York's Uniform Commercial Code § 9-406, an "assignee" includes the holder of a presently exercisable security interest in an assignor's receivables. We hold that it does. Under UCC 9-406, a security interest is an assignment and the UCC is purposefully structured to permit a debtor

- 1 -

to grant creditors security interests in a debtor's receivables so that the secured creditor can direct account debtors to pay it directly. Therefore, we reverse and remit for further proceedings consistent with this opinion.

I

Inasmuch as this appeal arises from a motion to dismiss the complaint, "[w]e must 'accept the facts as alleged as true, [and] accord plaintiff[] the benefit of every possible favorable inference'" (*Maddicks v Big City Properties, LLC*, 34 NY3d 116, 123 [2019]). According to the complaint, defendant New Style Contractors, Inc. (New Style), engaged Checkmate Communications LLC (Checkmate) as a subcontractor. Pursuant to a Promissory Note and Security Agreement dated October 11, 2019 between Checkmate and Worthy Lending LLC (Worthy), Checkmate could borrow up to $3 million (which amount could be increased) from Worthy. As provided by Section 3 (a) of the Agreement, Checkmate granted Worthy a security interest in its assets:

> "To secure the prompt payment and performance of [all of Checkmate's obligations to [Worthy], [Checkmate] hereby pledges and grants to [Worthy] a continuing security interest in and lien upon the Collateral, whether now existing or hereafter arising and wherever located."

The "Collateral" as defined in the Agreement, constituted substantially all existing and future assets and properties of Checkmate, including, "all right, title and interest of [Checkmate] in and to its (a) accounts . . . ." "Accounts" included the accounts receivable arising from invoices Checkmate issued to its customers, such as New Style. Under section 4 (k) of the Agreement, Checkmate granted Worthy the right to "notify and instruct account

debtors" (*i.e.*, Checkmate's customers, including New Style) "to remit payment of Accounts and other Collateral directly to Lender," including before a default, and promised that Checkmate would not "interfere with the collection of Collateral in the manner set forth in this section."

Worthy filed a UCC-1 Financing Statement against Checkmate with the Secretary of State of New Jersey, perfecting its secured position regarding Checkmate's assets. On October 2, 2019, Worthy sent New Style a notice of its security interest and collateral assignment in the New Style accounts and directed New Style that "[a]ll remittances for Accounts shall be made payable only to Worthy." In boldface type, Worthy's notice to New Style also stated:

> **Pursuant to Section 9-406 of the Uniform Commercial Code, payments of accounts made by New Style to Checkmate or to anyone other than Worthy Lending will not discharge any of New Style's obligations with respect to such Accounts, and notwithstanding any such payments, New Style shall remain liable to Worthy Lending for the full amount of such Accounts.**

Following Checkmate's default on the note, Worthy accelerated all indebtedness, liabilities and obligations of Checkmate and demanded immediate repayment. Checkmate subsequently filed for bankruptcy, with a balance due to Worthy of over $3 million. Worthy alleges that "New Style may have remitted payment of one or more New Style Accounts to Checkmate contrary to such notices of assignment."

Worthy commenced this action against New Style, alleging that pursuant to UCC 9-607, Worthy is entitled to recover from New Style all amounts New Style owed to

Checkmate after New Style's receipt of the notice of assignment. Supreme Court granted New Style's motion to dismiss the complaint on the grounds that (1) UCC 9-607 "'does not determine whether an account debtor, bank, or other person obligated on collateral owes a duty to a secured party'" (UCC 9-607 [e]); (2) the agreement was "a security interest and was not an assignment"; and (3) section 9-607 applies to assignments, not security interests.

The Appellate Division affirmed, holding that Worthy "did not have an independent cause of action against [New Style] pursuant to UCC 9-607" because section 9-607 (e) does not authorize a secured creditor, as distinct from an assignee, to recover from a nonparty debtor like New Style even though Worthy had directed New Style to pay Worthy instead of Checkmate (196 AD3d 422, 422-423 [1st Dept 2021]). Both lower courts followed the decision of a Michigan intermediate appellate court (*Buckeye Retirement Co., LLC, Ltd. v Meijer, Inc.*, 2008 WL 4278038, at \*2 [Mich App Sept. 18, 2008]) as well as an Appellate Division case (*IIG Capital LLC v Archipelago, L.L.C.*, 36 AD3d 401, 404 [1st Dept 2007]). We granted leave.

## II

The language of the statute, as well as the clear commentary on the relevant sections requires reversal. New York's UCC 9-607 and 9-406 adhere to the standard UCC language. Section 9-607 (a) (3), entitled "Collection and Enforcement by Secured Party," provides as follows:

"If so agreed, and in any event after default, a secured party . . . may enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor, and with respect to any property that secures the obligations of the account debtor or other person obligated on the collateral."

An account debtor who receives a secured creditor's notice asserting its right to receive payment directly can pay the secured creditor and receive a complete discharge (UCC 9-406 [a]) or, if in doubt, can seek proof from the secured creditor that it possesses a valid assignment and withhold payment in the interim (UCC 9-406 [c]).

Here, Worthy is the "secured party," with the authority to enforce the rights of its debtor (Checkmate) to collect on the obligations of the account debtor (New Style). The lower courts held that subsection 9-607 (e) bars Worthy from using the mechanism provided for in section 9-607, by providing that "[t]his section does not determine whether an account debtor, bank, or other person obligated on collateral owes a duty to a secured party." However, the plain language of subsection (e) merely states that UCC 9-607 does not *itself* determine whether an account debtor owes a duty to a secured party.

The agreement between Worthy and Checkmate grants Worthy the right to direct Checkmate's debtors to pay Worthy directly, and bars Checkmate from interfering with any such direction if given. Subsection (e) of 9-607 does not even imply, much less state, that parties cannot contractually assume duties concerning the right of a secured party to enforce the rights of a debtor as against account debtors. Indeed, section 9-607 (a) (3) expressly provides that "in any event after default," a secured party may obtain collateral

directly from an account debtor, and the secured party and debtor may agree that the secured party may do so by agreement, without regard to default—which they did here.

Consistent with the statute's text, the official comments of the UCC Permanent Editorial Board (PEB)[1] issued in 2020 explain that UCC 9-607 "establishes only the baseline rights of the secured party *vis-a-vis the debtor*" and permits "the secured party to enforce and collect [from an account debtor] after default or earlier if so agreed" (UCC 9-607, Comment 6; *see also* PEB Commentary No. 21 at 4 n 21).

New Style contends that UCC 9-406 allows only assignors—not holders of security interests—to rely on the payment-redirection provisions contained in that section. UCC Section 9-406 (a) states:

> "[A]n account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor."

---

[1] "The Permanent Editorial Board for the Uniform Commercial Code acts under the authority of the American Law Institute and the Uniform Law Commission (also known as the National Conference of Commissioners on Uniform State Laws). In March 1987, the Permanent Editorial Board resolved to issue from time to time supplementary commentary on the Uniform Commercial Code to be known as PEB Commentary. These PEB Commentaries seek to further the underlying policies of the Uniform Commercial Code by affording guidance in interpreting and resolving issues raised by the Uniform Commercial Code and/or the Official Comments".

The definition of "security interest" in the UCC itself does not distinguish between a security interest and an assignment and the definition section contains no separate definition of "assignment," "assignor" or "assignee" (*see* UCC Section 1-201 [b] [35]). The commentary makes clear that a security interest is treated as an assignment. As the commentary explains, treating assignments and security interests identically promotes efficient dealings between the parties—they do not have to try to determine whether the interest is an assignment or a security interest by parsing contractual language. New York case law, state and federal, is consistent (*see, e.g.*, *Chase Manhattan Bank (N.A.) v State*, 40 NY2d 590, 592-93 [1976]; *Septembertide Publ., B.V. v Stein & Day, Inc.*, 884 F2d 675, 682 [2d Cir. 1989]) as is case law in other states (*see, e.g.*, *Magnolia Fin. Grp. v. Antos*, 310 F Supp 3d 764, 765-67 [ED La 2018]; *Garber v. TouchStar Software Corp*, 2011 WL 12526062, at *4 [Colo Dist Ct Nov 10, 2011]). The PEB recently amended the official UCC comments to clarify what has long been the case: "[t]he term 'assignment,' as used in [UCC article 9], refers to both an outright transfer of ownership and a transfer of an interest to secure an obligation" (Commentary No. 21 at 4).[2]

---

[2] Even prior to its amendment, Comment 26 to UCC 9-102 stated as follows:

> "In numerous provisions, this Article refers to the 'assignment' or the 'transfer' of property interests. These terms and their derivatives are not defined. This Article generally follows common usage by using the terms 'assignment' and 'assign' to refer to transfers of rights to payment, claims, and liens and other security interests. It generally uses the term 'transfer' to refer to other transfers of interests in property. Except when used in connection with a letter-of-credit transaction (see Section 9-107, Comment 4),

The cases relied on by New Style, in particular *IIG Capital LLC v Archipelago, L.L.C.* (36 AD3d 401, 404 [1st Dept. 2007]) and *Durham Commercial Capital Corp. v Ocwen Loan Serv., LLC* (777 Fed Appx 952, 956 [11th Cir 2019]), have been expressly rejected by the PEB. The PEB commentary opined that *IIG Capital* and other decisions interpreting "the term 'assignment,' especially in the context of [s]ection 9-406 (a), as referring only to an outright assignment of ownership" were "incorrect" (Commentary No. 21 at 2)[3] explaining that subsection (e) states that section 9-607 "does not determine whether an account debtor . . . owes a duty to a secured party" because:

> "Sections 9-607 and 9-406 address different rights. Section 9-607 addresses the rights of a secured party vis à vis the debtor to collect a specified payment right. Section 9-406 addresses a secured party's rights against the account debtor to collect a specified payment right. If [s]ection 9-406—and Part 4 of Article 9 more generally—did not apply to an assignment constituting a [secured interest], there would be a gap in Article 9: nothing in Article 9 would address the rights, claims, duties,

> no significance should be placed on the use of one term or the other. Depending on the context, each term may refer to the assignment or transfer of an outright ownership interest or to the assignment or transfer of a limited interest, *such as a security interest*" (McKinney's Cons Laws of NY, Book 62½, UCC 9-102, Comment 26 [2016 ed] [emphasis added]).

[3] The parties dispute whether language in *IIG Capital* is *dicta*. It is *dicta* for two distinct reasons. First, the court in *IIG Capital* held that the plaintiff was the assignee of the accounts receivable, so the case cannot determine whether a security holder other than an assignee may proceed under section 9-607 (36 AD3d at 402-403). Second, the assignee's rights in that case were expressly conditioned on an event of default, which had not occurred (*id* at 404). Thus, the assignee's inability to invoke section 9-607 did not turn on an interpretation of the UCC at all, but rather on the specific contractual condition of the assignment in that case. In any event, *IIG Capital* does not bind us.

and defenses of an account debtor with respect to that type of assignment."

New Style also argues that because Checkmate advised New Style that there was a "dispute" between Checkmate and New Style, Worthy cannot rely on section 9-607 (a) (3), which begins, "If so agreed."  "If so agreed" refers, however, to agreements creating or modifying the security interest (here, the Promissory Note and Security Agreement between Worthy and Checkmate); allowing a claimed dispute to nullify sections 9-607 and 9-406 would render those provisions meaningless by removing the ability to obtain the value of the security whenever the debtor claims a dispute exists.  In short, nothing in UCC sections 9-607 or 9-406 prohibits a secured creditor and debtor from agreeing as they did here.  Where they have contractually so agreed, once the secured creditor provides the requisite notification to account debtors, an account debtor cannot discharge its obligation by paying the debtor, but must, instead, pay the secured creditor or ask for proof of assignment from the secured creditor (*see* UCC 9-406 [a], [c]).

Finally, both the Appellate Division and Supreme Court expressed concern that New Style may have paid Checkmate and now may be forced to pay double.  That is the statutory consequence of failing to pay a secured party who has notified the account debtor to pay the secured party directly.  With respect to UCC 9-406's predecessor statute, we held that "after the account debtor receives notification that the right has been assigned and the assignee is to be paid, and it continues to pay the assignor, the account debtor is liable to the assignee" (*General Motors Acceptance Corp. v Clifton Fine Cent. School Dist.*, 85 NY2d 232, 236 [1995]).  If New Style continued to pay Checkmate after receiving direction

from Worthy to pay Worthy instead of Checkmate, the burden of double payment as between Worthy and New Style falls on New Style.

Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant's motion to dismiss the complaint denied.

Order reversed, with costs, and defendant's motion to dismiss the complaint denied. Opinion by Judge Wilson. Acting Chief Judge Cannataro and Judges Rivera, Garcia, Singas and Troutman concur.

Decided November 22, 2022